Mr. Marzalla. Good morning, Your Honors. This is an appeal from the trial court's refusal to award any expectancy damages at all on Rima and following this court's determination that the Bureau of Reclamation had breached its contract with Central San Joaquin Water Conservation District for the delivery of certain quantities of water under water supply contract. Central is a California state agency established for the purpose of protecting and restoring the San Joaquin River by providing a surface water supply that will make it possible for farmers to convert from the use of underground water. The trial court erred in three respects. First and most importantly, the trial court applied the wrong measure of damages. Second, the trial court in the guise of deciding damages strayed into and confused its role so that it dealt with liability issues that had already been decided by this court and in fact decided those liability issues in a manner contrary to the way in which this court had decided them. And finally, the court applied a standard of evidence that far exceeds the preponderance of the evidence standard that Fortunately, however, the trial court did, anticipating perhaps the possibility of reversal in this case, provide this court with a putative damages calculation such that it is possible for this court to determine the actual damages that are due Central for expectancy and to instruct the trial court then to enter judgment in favor of Central for those expectancy damages together, of course, with the cost of cover damages that the trial court did award. I want to put aside for a minute the statement from the rehearing decision that you quote many times in your briefs. Perhaps too many. Well, it was a good sentence because as I looked at the briefing then, it did not appear to me to be the case that the issue of what exactly constituted the underlying breach was litigated. What was litigated was a whole set of defenses. So I go back to the language of the contract, which doesn't say deliver. It says make available. And I understand how when reclamation said we won't actually make available 56,000 plus whatever Stockton was guaranteed, that that was a breach. But if that was a breach, then why isn't the question that the Court of Federal Claims asked, how much water would you actually have taken if the full 56K had been made available? And the court concluded you didn't prove that you would have taken more than you did. I think the simple answer to that, Your Honor, is found in this court's analysis of Article III, taken together particularly with Article V of the contract, which constitutes, as this court indicated, a take-or-pay provision up to the breach years that was not particularly important because there was a build-up through the first 10 years of the contract. The first breach year happened to be year 11 of the contract, which was 1999, and in that year, the contract minimum take-or-pay provision kicked in force such that Central was obligated to pay for and reclamation was obligated to provide a minimum of 56,000 acre-feet. And that is how this court, as I understand it, how this court got to the conclusion that the failure to deliver that 56,000 acre-feet was a breach. I suppose it is theoretically possible that Central would pay for the water and then say don't deliver it, but that would be falling in a world in which this water is extremely valuable, as the trial court found. And as this court knows, the trial court determined the fair market value of that water and that it could be sold. Can I just ask you about that? I understand it. Correct me if I've got the facts wrong. The government says a number of times in its brief, and I didn't see a response to this in your reply brief, that in the year 2000 and in the year 2002, those two years, not other years, forget about the other years, that Central actually did not take as much as was allocated. And if that's true, why isn't that an awfully powerful bit of evidence for the Court of Federal Claims conclusion that even if reclamation had made more available, you would not necessarily have taken it, notwithstanding whatever you might have been able to turn around and sell it for in the spot market. Your Honour, there is a factual dispute as to those statements, taking the year 2000 as an example. The evidence was that when reclamation started the year in January, the announcement was there's going to be no water this year. And on the basis of that, many farmers have to make their planting decisions by February or March. It was after those planting decisions had been made that reclamation said, guess what, we have some additional water. And that 90,000, by the way, Your Honour, was not just for Central, as the government's brief suggests. It's shown, the only evidence we have is it's shown in a press release in which reclamation said Stanislaus River contractors, as a group, are entitled to 90,000 acre feet. So there never was an offer of 90,000 acre feet made to Central in the year 2000. I apologize, I don't recall 2002. Mr. Marzullo, before we get too deep into the weeds, wet or dry as they may be, let's go back to the opening question from Judge Taranto, because I think he touched on what is the central issue in Central's case. The question is, he rightly notes that the contract is written to say that the government will, what is the phrase, not allocate, but make available. Thank you. The government will make of this court on the liability issue, and then reaffirmed in our re-hearing, generally, we made a statement about that, picking up, in fact, on what the trial court itself had said originally as to what the contract required. And the trial court, in its most recent opinion, says this court previously found that Article 3 not only obligated reclamation to provide the minimum amounts of water listed in the build-up schedule, but also required each district to purchase such amounts of water, citing to itself. The federal circuit affirmed that finding, citing to our first Stockton opinion. As I read that, we, picking up on the trial court's contract interpretation, held that it was, as the trial court indicates in the heading for its discussion here, this was a take that the contract said, but it was an interpretation of the contract by the trial court in its original liability decision, and an interpretation that we specifically affirmed. So the question, it seems to me at this point, is, was that dicta on both courts par and not binding, and therefore is an open question at this point in Or is that law of the case a finding, in effect, that the government was obligated to provide that amount, just as Central was obligated to take that amount. And what that issue is breach of the contract, not what actually transpired. The contract was found to be breached, and so the only question before us is the proper measure of damages as it was before the trial court. Or is that question still an open question? Let me go a step further and point out that later in the trial court's opinion, this is JA 23 at the back of the blue brief, the trial court said the court finds that while Article 3 is a take or pay provision, the evidence establishes that the provision would not have been enforced absent reclamation's breach. So that really gets to the heart of, I think, what Judge Toronto zeroed in on right at the beginning. Does this case involve a take or pay provision? It really isn't take or pay, it's take and pay. Does this case involve a damages concept that arises in the context, for example, of a contract for resale of goods? Is that the case? I'm not sure that expectancy damages is really the label that we're wrestling with. One way to look at it is it's a contract for resale of goods, in which case the breaching party owes the difference between what you would have gotten for having sold the goods on resale. Or is this a case, as the trial court seems to think, that this goes back to the original contract language, that the government was only obligated to make it available and it really depends on what you needed and what you actually did. Is that issue still before us? Your Honor, we, as the court can see from our briefs, do not believe that that issue is still before the court. And here's why. The trial court drew in again, went back and pulled in this whole issue of requests for water. Now the court will recall that in the first trial and the first appeal, the trial court found, and I think this court accepted, that because of the way this contract had operated, with reclamation announcing in advance what they would and wouldn't supply in terms of water, that there was no request process. Now if there's no Well, wait a minute. With all due respect, that issue was dealt with by the trial court and by us in the earlier opinion. And again, in this opinion by the trial court, we all agreed that the failure to make the request was not a defense to the breach of the contract. So that issue is not really before us. So the question was, what is the breach? What was it that the court did hold was the breach? That's Judge Toronto's question. I need to understand what is the breach. Yes. And my answer, Your Honor, I think is this. Recall that 56,000 was the minimum that reclamation was required to make available and that Central was required to pay for. That was the floor. That there was an 80,000 acre foot maximum which had been allocated for this contract. And Central had the right to request up to that maximum. Is it your position that what happened thereafter is irrelevant to the question of breach? Happened after what? I'm sorry, I don't understand. Well, the fact that you didn't request the water, they didn't make the water available. Are all those in some years, and as you and Judge Toronto started a colloquial discussion about exactly how many gallons or how many acre feet, and as you remember, the original opinion went into that in great length. I spent many, many hours calculating gallons of water. But putting that aside, is any of that relevant to the question of the measure of damages for the breach? And is the breach the breach of contract or is the breach the breach of performance? Well, I'm not sure I understand the difference between those two, Your Honor. Well, performance is the actual events that occurred. It might have been that this court could have held that when reclamation in 1993 announced passage of the Central Valley Project Improvement Act, it means that we're not going to be able to fulfill this contract. The court might have said, well, that was an anticipatory breach, and it is that breach against which damages should be measured. But I don't read this court's opinion to have said that, or the trial court's opinion. Whatever may have been the breach, we have the record now as full on the government's side of saying that there was an understanding and expressed statement, don't worry if you don't take the entire amount that perhaps you're committed to take, we're not going to charge you for it. As well as their position that there was a loss on every acre foot of water that was taken, and with a hint, which isn't particularly developed on this appeal, other than to cast doubt on the broad generalization that expectancy damages is the measure. Is your position that none of that really is relevant? No. My position on the first issue, Your Honor, is there's not a scintilla of evidence to support the notion that if reclamation had made available the 56,000 acre feet, it wouldn't have charged Central for that amount. If Central had said, no, we don't want it. That never happened. We don't have any, there was no testimony, there's no correspondence. What the government relies on is, they said, well, we never charged you for 56,000 acre feet. Our response is, because you never gave us 56,000 acre feet. You never made it available, you could hardly charge us for that. Do you happen to know, focusing specifically on the year 2000, put aside 2002, and maybe one other year, there's a, well, focusing on 2000, you actually did take less than they made available. Did they charge you for what they made available, or only for what you took? In each year, they only billed for the water that was delivered. But I, again, remind the Court that in the year 2000, the government did not make 56,000 acre feet available to Central. That is not the case. And I looked at what they cite for that. They have this string cite. If you look at it, what they're referencing is some charts or tables that were put together by some parties. But there is no testimony to support that. The only testimony is Mr. Robert's testimony, where he explained what I indicated. That the making available of that water was done jointly to the Stanislaus contractors, which includes Stockton East and Central and possibly some others. It was unclear. And it was done too late in the season to do any good. So it really wasn't a bona fide making available of that. Let's hear from the government. We'll save you a rebuttal time. Thank you, Your Honor. Thank you. Mr. Harrington, what is your understanding of what is at issue in this case? Well, Your Honor. You heard the debate we were having here. How do you come down on the question of what was the government's duties under this contract? Well, the government's duties under the contract, Your Honor, were to make available a specified quantity of water each year. It's duties as they emerge in the course of the litigation. Not the verbiage in the contract, because the verbiage in the contract got construed. And, Your Honor, the construction of that verbiage is consistent, in our view, with the plain language of that verbiage. If you look at this court's decision, at pages 13, 15, and 51, it quoted that very language from the contract. It said, quote, Article III of each contract specifies the maximum amount of water to be made available annually from the new loans contract. Later it said, Article III also establishes for each year of the contract a minimum amount of water that Reclamation is obligated to make available. This court did use that language in its original decision and quoted directly from the contract language. There's no inconsistency. Look also, I'm not quite sure which page number is further in the opinion. That opinion says, the record establishes and the trial court found as a fact that Reclamation failed to provide the water that was promised under the 1983 contracts for the years 1994-95 and 99-2004, the years it issued in this appeal. So absent an affirmative defense, that failure by the government would constitute a breach of the contracts and render the government liable for damages for the breach. What was the breach? It was the failure to provide the water that was promised under the 1983 contracts. And the opinion then goes through that schedule of 56,000 acre feet, et cetera, et cetera. So there was perhaps erroneously a misunderstanding by the trial court as to what Article III obligated the government to do. And perhaps we erroneously went along with the trial court. But doesn't that at some point become law of the case? Your Honor, I don't believe there was a misunderstanding. But let me add that the distinction that plaintiffs seek to add, appellants seek to make, between the delivery of water and making water available doesn't really make sense in the context of these contracts in this case. And the reason is that the water here was stored behind the new Malone estate. The question is not delivery or availability. The question is, what was promised under the contract? Because we're trying to sort out a breach of contract liability, which got sorted out, I thought. And maybe it wasn't exactly what it should have been. I don't know. But at that point, it was widely understood and agreed it was a promise to deliver 56,000 acre feet that didn't happen. Well, the reason I say the distinction between making available and delivery doesn't make sense is because the time of delivery for a district that is hoping to provide waters to farmers for irrigation, the timing of that makes sense. And so Reclamation would say, we have this amount of water available to you this year. Central had to come back and say, we want this much in April, this month in May, this month in June for irrigation. There had to be that sort of coordination between Reclamation and Central in order to be able to provide the water at the times that Central needed it. Everybody agreed that the failure of Central and the other water companies to actually make the request was irrelevant to the question of breach. To the question of breach. Yes. But now we're dealing with the question of damages. And so what happens does have, the timing of things, what happens does have an effect on damages. Let me explain why. Imagine that Reclamation said, we're required to deliver 56,000 acre feet of water. And we're going to give it to you in April. Okay. Central hasn't said when they wanted it delivered. They say, we'll give it to you in April. That's irrational. I mean, I think let's just stick to what the understanding had to be. If you're delivering irrigation water, you're not going to dump it all on the first week of the year. And that's right. And so when we're looking at the no breach world, we're looking at the world in which things went the way they were supposed to go. And in that no breach world, Reclamation says, we have this volume of water available. And Central tells Reclamation when they want water available. Right. Now the question then becomes, what happens to that water? And that's very important. And that's where we make our point about the demand of district farmers. That Central has failed to show a demand on the part of its district farmers for 56,000 acre feet of water. But that's not the government's problem. That's Central's problem. They may end up with 56,000 acre feet in which they're drowning. They wish they had it now. In which they're drowning with 56,000 acre feet for which they have no market. But a shoe company that ordered 10,000 pairs of shoes, a shoe retailer, and discovers that everybody's now wearing boots by the time the shoes showed up, that's the retailer's problem. Because the company that sold the shoes to the retailer is entitled to its profit. Now, let me add to this. I'm troubled by the size of the claim they make. It sounds to me like $13 million is an enormously large damages award for what actually eventually occurred. But on the other hand, I find that $100,000 for just a small amount of water that Central had to buy could be de minimis. Well, did you all discuss anything in between or any other damages measure? Your Honor, the reason there was no other measure considered is because Central took an all or nothing sort of proposition in the no breach scenario that it presented at trial. It could have come in and said our farmers would have used 20,000 acre feet of water each year. It didn't. Now, it's important to recognize what really happened on the ground here in these years and in the years before and after this breach when we were analyzing damages. In 1996, that's a no breach year before the damages, Central took 17,000 acre feet of water despite the fact that more water was available to it from reclamation. It was charged for 17,000 acre feet in that year. Not the larger volume that was made available and Central's farmers used about 12,000 acre feet of water. Not the 56,000 that they based their damages model on in 2005 and 2006. Can you talk about two of the years in the breach? Absolutely. The 2000 and 2002 are the ones that at least I took from your brief to be years in which you say in 2000 they actually did request less than was allocated. In 2002, I'm a little bit confused as to how whether you're making that same point or something that depends on their getting some water from San Joaquin or something. In 2000, what the decisions show, what documents introduced into evidence at the trial show was that there was an allocation of 90,000 acre feet that year. That was a joint allocation to both Central and Stockton East. And their total minimum was more than that. So, it was not a year where the full amount that was the minimum under both contracts was allocated. It was short. And that's why there was found to be a breach. But, of that 90,000 acre feet that was allocated, not all of it was taken and used. And I would add, Central was only charged for the amount of water that was actually delivered to it. It wasn't the larger amount that was made available that it could have had. It was the actual amount delivered. Can you clarify if you can quickly the 2002 situation? Gladly. In 2002, it was another water short year. And what Central did was they went out and they entered into a contract with another local irrigation district, South San Joaquin Irrigation District. That contract required them to purchase 15,000 acre feet, allowed them to purchase up to 30,000 acre feet. In fact, they chose to purchase 20,000 acre feet. So, there was still 10,000 acre feet on the table that they had an option to purchase from South San Joaquin. I'd add, this is the very same water. It comes from the same dam. It flows through the same delivery system. So, there's no distinction in the water at all. There was 10,000 acre feet that they left on the table that they did not take, that they had a right to obtain from South San Joaquin. They only took 20 of the 30 that they had in the contract for. So, try to explain to me this in kind of common sense terms. The Court of Federal Claims agreed with their expert that there was a spot market with some prices substantially higher than what they would have had to pay or didn't pay for whatever they bought from Reclamation. How is it even possible that they would not have bought the extra 30,000 acre feet to resell it at a nice profit? It's because water is not like shoes, Your Honor. It's not something that's fungible that you can just sell anywhere. Here, you've got water that's available from a particular dam and there are only a few irrigation districts that could conceivably buy and use that water. Those irrigation districts, in the years we're talking about, didn't have an interest in buying or using that water from Central. If Central's general counsel testified that Central would not have sold water in the breach years had it received the full allocation. He also testified at trial that they would have, but the judge made a credibility determination that that changed testimony was not credible. It's worth looking at what Central did in years where it had additional water before and after the breach. Can I just double check? Yes, Your Honor. In your description in the last few sentences of evidence, are you taking issue with any finding made by the Court of Federal Claims on this water sales, in its water sales section, or not? The only issue that I take with what the Court of Federal Claims did, Your Honor, is the fact that this water sale could have taken place consistent with the contract. The contract here specifically says that Central cannot resell water without Reclamation's express written consent. It's not a resale contract. But your point that there are good reasons why even if Central could have, it would not have. It would not have, and it would not have chosen to, because what we see in years where there was additional water, for instance, 2000, where there was additional water, it didn't make any sales. In 1996, in 2005, 2006, these are non-breach years, but there was excess water in those years. Central did not attempt to sell and did not sell any water to anyone outside the district. And, coupled with that, there were limitations in the Bureau of Reclamation's own regulations about when it would permit a sale. As I said, the contract itself says that Central cannot resell this water without Reclamation's express written consent. All of what you're arguing depends on whether Central's actual conduct under the contract is relevant to the question of breach, doesn't it? Well, it is. Central's later conduct in how it handled its water sales. I agree, Your Honor, it does. But, in our view, their actual conduct is the best evidence in showing what they would, in fact, have done. Because here they had opportunities to do, in other years, what they say they would have done during the breach years. But your assumption is that what they would have done is relevant to the question of whether the government breached the contract. I'm having trouble getting that connection. I want to be clear. The government did breach the contract when it didn't make the requisite volume of water available. But, imagine a situation where Central's farmers didn't need the water, and we've shown that they didn't need anywhere near the volume that Central claims. And it had no resale options. Now, it's important to note that Central doesn't say how much would have gone to farmers and how much would have gone in this resale market. The price it sold to its farmers was between $10 and $27 per acre foot. So, if there would have been additional sales to district farmers, as Central contends, these spot market prices are not the right price to use in calculating damages. Let me take you back to a little bit of history in this. The historical record shows that the government would not have been allowed to operate this dam and to run the whole operation by the state of California, but for the fact that the government agreed to show that it would sell every year and had purchases every year for the amount of water that the government was claiming would be irrigation water, would be created by the Melanies Dam. If you go back in history, there was a requirement from the state of California that the government show the state of California that it had purchasers for that 56,000 acre feet. The government made that representation to the state of California in order to run this whole operation under the reclamation program. You're saying that that representation was not binding on the government. That representation is not evidence that, in fact the court found that that was not appropriate evidence to use to figure out what the actual demand was 20 years later.  It's not. It's what was believed in 1983, but we're talking about 20 or more years later and what actually happened. Is it your position that whatever the contract may have meant when it was written in 1983, what we need to do now is look at how the parties actually administered the contract 20 years later in order to understand what the contract required. Is that basically your position? Well, first of all, course of conduct sort of evidence is certainly admissible for that sort of thing and that is part of what we're saying. For instance, on the take or pay issue that you alluded to, the evidence showed that in the years before, in the years during the breach, and in the years after the breach, reclamation did not enforce that take or pay provision. So, it was uniform across the board and I used take or pay loosely. I'm not trying to change the contract language by using that shorthand. So, certainly those sorts of things are relevant, but more importantly is the fundamental question, it's at bottom a causation question because the comparison between a breach and a no breach world is one in determining causation and whether damages were actually caused by a breach, an admitted breach, whether damages flowed from that. That's the test for expectancy damages. And that is what the court rejected and that is what Central has requested in their brief and that is why we've responded to that argument. But because in the no breach world, if you look fairly at that no breach world, Central's farmers did not have an appetite for the volume of water Central was able to get under this contract. Again, this is a not before the breach, not during the breach, and not after the breach sort of thing because in 2006 and 2010, reclamation did allocate the full amount to both Stockton East and Central. And in those years, Central didn't take the full amount, didn't pay for the full amount, and its farmers used far less than the 56,000 acre feet that Central would have its damages based upon. Any more questions for Mr. Herrington? Thank you, Mr. Herrington. Thank you, Your Honor. Just a couple of points. First of all, Your Honor, I want to stress that with respect to the year 2000, the government's contention now that it made available more than 56,000 acre feet, if accepted by this court, of course means it wasn't in breach in the year 2000. We understood that that issue was resolved in the first appeal and that the government was not now in a position to argue that it didn't, in fact, breach the contract in the year 2000. I've already pointed out that factually, we disagree with that. We do not believe that the government made available more than 56,000 acre feet in the year 2000. The court has not yet addressed, or I haven't had the opportunity to address, the substantial evidence that we did admit in order to demonstrate the demand. And I think the trial court established a level of proof that goes way beyond preponderance of the evidence. That is, the court never really made a finding that Central wouldn't have used additional water if reclamation had, say, in 1999, not said, all you're getting is 33,000 acre feet. What the trial court said is, well, you've got to demonstrate something more. But I think as a matter of law, consider that we produced two witnesses, the general counsel and the chairman of the board, both of whom know intimately most of these farm families. Many of them are intermarried and it's a very closely knit community. They testified that in each of the breach years, Central would have used all this water. The government pooh-poohs these various studies that were done for this contract, the decision by the California State Water Board that the court referred to. Well, what the government pooh-poohs is not the issue. It's what the trial court accepted as fact. Well, yeah. Well, the government calls those studies stale. Your Honor, these were studies. What did the trial court say about it? Yes, and these were studies that were, this is the kind of study that underlies each and every of the scores of water supply contracts on which the Central Valley Project is being operated today. They're 40-year contracts with rights of renewal. These studies were not intended to be mere snapshots of a particular point in time. If this study is stale and non-predictive, then so are the rest. And there is no basis for Reclamation to be operating the Central Valley Project today based on these old stale studies that don't tell us anything about water demand. Likewise, the engineering firm CH2M Hill designed and sized the water delivery system after extensive engineering studies, including community meetings, including interviews, including letters of intent, to deliver 80,000 acre feet in Central annually. Why? Because that engineering firm, using its expertise, anticipated that there was that demand. The government offers this court no reason why the rest of California, one-third of the agricultural production in California, relies on the surface water from the Central Valley Project. But for some reason, this little water conservation district tucked away in a corner of San Joaquin County didn't have demand for that water. The trial court listed over a dozen cases in which Central Valley farmers, such as these farmers, have brought suit to get water. In fact, this suit was filed in 1993, immediately after Reclamation announced that they wouldn't be able to fulfill the contract for the purpose of obtaining this badly needed water. The trial court said you had the burden to prove the existence of a market for all the water that you're now claiming the government didn't provide for you, and that you failed to prove that. I'm suggesting, Your Honor, that what the court set was an impossible bar. After years of Reclamation each year announcing in 1999, you're going to get 33,000 acre feet. And so what the trial court said is, after you told everybody you're only going to get 33,000 acre feet from Reclamation, since what they've been doing for 10 years, now you've got to prove to me that if Reclamation hadn't made that announcement that your farmers would have taken more water. How do you prove that? That's an impossible burden. We did put on oral testimony. We did put on the studies. We showed what else is happening with every other farm community in California. So the trial court had to make a determination based on preponderance of the evidence. The only witness the government put on was a Mr. Schiruti, an engineer, whose testimony, who said, well, he thought farmers didn't like surface water as much as groundwater. And the court said, that testimony is not helpful.  That's it. That's the only evidence on the other side of the scale, Your Honor. The vast preponderance of evidence is that the farmers would have used it, and the court simply said, well, didn't give a reason why. She just said, that's just not enough. So the preponderance of evidence is there. We even met the standard that the court set. That's the error that you're claiming the trial court made, is that correct? Absolutely, Your Honor. That evidence, she didn't find it lacked credibility. She didn't find it unconvincing. She didn't find it inadmissible or anything else. She just said, well, I don't think that's enough under this court's causation standard for proving damages. Did you raise in your damages claims any reliance damages for the construction of the infrastructure that was needed to transport the water, or was that not an issue? We did not, Your Honor. We thought that was too complicated. We saw this as a sale of goods contract, and that the damages are simply assessed on a per acre foot basis. Any more questions? Any more questions? Thank you, Mr. McGowan. Thank you, Your Honor. Thank you, Mr. Harrington, in case you've taken any submissions.